**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| HEBREW HOME OF GREATER WASHINGTON, INC., <br> Plaintiff, <br><br> v. <br><br> CORESOURCE, INC., *et al.*, <br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Civil Action No. 11-cv-00710-AW |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM OPINION**</u>

Plaintiff Hebrew Home of Greater Washington, Inc. ("Hebrew Home") brings this action against Defendants CoreSource, Inc. ("CoreSource") and Sun Life Assurance Company of Canada ("Sun Life"). Hebrew Home asserts claims for breach of contract and negligence against CoreSource arising out of CoreSource's duties and obligations as Plan Supervisor of Hebrew Home's Employee Benefit Plan (the "Plan" or the "ERISA Plan"). Hebrew Home also asserts a breach of contract claim against Sun Life arising out of Hebrew Home's Stop-Loss Policy with Sun Life (the "Reinsurance Policy"). Presently pending before the Court are Defendants' Motions to Dismiss. *See* Doc. Nos. 13, 16. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. Local Rule 105.6 (D. Md. 2010).  For the reasons that follow the Court grants in part and denies in part CoreSource's Motion to Dismiss and grants Sun Life's Motion to Dismiss.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the Complaint and construed in a light most favorable to Plaintiff.[1] This case involves a claim by Hebrew Homes for reimbursement for medical expenses incurred by a Hebrew Home employee under Hebrew Home's self-insured medical benefit plan (i.e., the ERISA Plan). Defendant CoreSource was the claims administrator for the plan and was responsible for properly submitting claims to Sun Life. Hebrew Home entered into an agreement with CoreSource (hereinafter the "Plan Supervisor Agreement") in which CoreSource agreed to assist Hebrew Home with the administration of its ERISA Plan. Compl. ¶ 1. CoreSource's responsibilities under the Plan Supervisor Agreement, which was subsequently renewed on August 1, 2002, included reviewing beneficiaries' claims, determining their eligibility subject to the Plan, and, where applicable, denying ineligible claims. Doc. 19 Ex. A at 4.

Hebrew Home also entered into a Stop-Loss Insurance Policy (hereinafter the "Reinsurance Policy") with Sun Life to provide Hebrew Home with reimbursement for eligible medical expenses incurred by Plan participants in accordance with the terms of the insurance policy. Compl. ¶ 14. The policy was originally effective as of January 1, 2003, was renewed on January 1, 2007, and expired on December 31, 2007. *Id.* Under the Reinsurance Policy, Sun Life agreed to reimburse Hebrew Home for any eligible expenses that Hebrew Home paid out during the length of the Reinsurance Policy (i.e. January 1, 2007 through December 31, 2007) and within a three month "run-out" period. During the run-out period, which expired on March 31,

---

[1]The Court also references certain other documents, like the Reinsurance Policy between Hebrew Homes and Sun Life, attached to Defendants' motions to dismiss. Hebrew Home references and cites to all such documents in its Complaint, and such documents are integral to its claims. The law is well-established that, on a motion to dismiss, the court may consider a document not attached to the Complaint as long as such document is "integral to and explicitly relied on in the Complaint." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Accordingly, the Court's consideration of these documents do not convert Defendants' motions to dismiss into motions for summary judgment. *See Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 1991).

2008, if eligible medical expenses were funded and paid by Hebrew Home, Hebrew Home would still be eligible for reimbursement by Sun Life on those expenses. *Id.*

During 2007, one of Hebrew Home's employees, Isatu Kamara, submitted claims under the ERISA Plan for medical expenses incurred on behalf of her daughter.  Compl. ¶ 15. Under the Plan Supervisor Agreement with CoreSource, Hebrew Home sent Kamara's claim for benefits to CoreSource for eligibility determination, processing, and filing with Sun Life. However, CoreSource did not approve or process Kamara's claim for benefits until March 31, 2008, the final day of the run-out period. Compl. ¶ 17. Due to the belated approval of Kamara's claim on March 31, the claim "could not . . . be funded and paid on that date due to an insufficiency of funds – an insufficiency for which CoreSource was directly responsible and of which Hebrew home had no notice from CoreSource." *Id.*

Additionally, Hebrew Home was unable to obtain reimbursement for Kamara's claim from Sun Life on its Reinsurance Policy. *Id.* at ¶¶ 18-21.  By letter dated August 20, 2008, Sun Life denied Hebrew Home's request for reimbursement of the $181,433.56 claim. Compl. ¶ 18. Under the terms of the Reinsurance Policy between Sun Life and Hebrew Home, any claim that Hebrew Home failed to fund and pay before the run out period was ineligible for reimbursement by Sun Life. Because Hebrew Home had failed to timely fund and pay out Kamara's claim before the run-out period expired, Sun Life denied coverage of the claim. Hebrew Home thereafter appealed Sun Life's denial of coverage, which Sun Life subsequently denied.  Hebrew Home filed a second appeal with Sun Life. Compl. ¶ 19. By letter dated May 21, 2009, Sun Life denied Hebrew Home's second appeal, maintaining that under the terms of the Reinsurance Policy, claims not paid by Hebrew Homes prior to the run-out period were ineligible for coverage. Compl. ¶ 21.

On February 22, 2011, Hebrew Home filed a three-count Complaint against CoreSource and Sun Life. Doc. No. 2. Count I of the Complaint asserts breach of contract against CoreSource for failing to comply with its obligations under the Plan Supervisor Agreement to review, process, and secure reimbursement for Kamara's claim. Count II asserts a negligence claim against CoreSource for breaching its duty of care to Hebrew Home in approving and ensuring timely funding of Kamara's claim. Count III asserts a breach of contract claim against Sun Life for failing to reimburse Hebrew Home for the $181,433.56 it paid out on Kamara's claim pursuant to the Reinsurance Policy. Defendants removed this action from the Circuit Court for Montgomery County to this Court on March 16, 2011. *See* Doc. No. 1.

CoreSource filed a Motion to Dismiss on March 23, 2011. Doc. No. 13. Therein, CoreSource urges the Court to dismiss the Complaint on the grounds that Hebrew Home's breach of contract and negligence claims are preempted by ERISA and time-barred by the Plan's two-year Legal Limitation Period. Sun Life filed a Motion to Dismiss on April 13, 2011. Doc. No. 16. Sun Life urges this Court to dismiss the Complaint on the grounds that Sun Life is not liable for breach of contract under the terms of the Reinsurance Policy.

## II.    STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

4

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## III.    LEGAL ANALYSIS

Defendants' Motions to Dismiss raise a number of arguments. CoreSource moves to dismiss Hebrew Home's claims on the grounds of preemption and on the grounds that the claims are time-barred by the ERISA Plan's two-year Legal Limitations provision. Sun Life moves to dismiss on the grounds that it satisfied its obligations under the Reinsurance Policy and is not liable for breach of contract. Hebrew Home's claims against the Defendants fall into three categories: (1) claims relating to CoreSource's failure to review, handle, and process Kamara's claim pursuant to the ERISA Plan and Plan Supervisor Agreement; (2) claims relating to

CoreSource's failure to submit reinsurance claims to Sun Life pursuant to the Plan Supervisor Agreement; and (3) claims relating to Sun Life's failure to reimburse Hebrew Home for Kamara's claim pursuant to the Reinsurance Policy. For the following reasons, the Court grants in part and denies in part CoreSource's motion to dismiss and grants Sun Life's motion to dismiss.

      A.      <u>CoreSource's Motion to Dismiss</u>

            1.      <u>Hebrew Home's Claims are Not Time-Barred</u>

Hebrew Home's Complaint asserts state-law causes of action against CoreSource for breach of contract and negligence. CoreSource now moves to dismiss both claims on the grounds that they are time-barred by a two-year limitations period contained in the ERISA Plan. The relevant language in the Plan provides that:

> No action at law or in equity shall be brought to recover on the benefits from the Plan prior to the expiration of sixty (60) days after all information on a claim for benefits has been filed and the appeal process has been completed in accordance with the requirements of the Plan. No such action shall be brought after the expiration of two (2) years from the date the expense was incurred, or one (1) years from the date a completed claim was filed, whichever occurs first.

Doc. No. 9 Ex. A at 64.

CoreSource contends that Hebrew Home's claims are governed by this provision, and as such the very latest Hebrew Home could have sued for Plan benefits was August 20, 2009, one year after Sun Life denied coverage on Kamara's claim. This argument is unpersuasive. The clear and unambiguous language of the limitations provision provides that "no action in law or in equity shall be brought to recover on the *benefits from the Plan*." *Id.* (emphasis added). The language contained within the ERISA Plan makes the most sense if read to preclude suits by beneficiaries after a claim for benefits has been denied and appropriately appealed. Hebrew Home is not a beneficiary of the Plan but a Plan administrator and sponsor of the Plan.

Accordingly, the Court denies CoreSource's motion to dismiss on the ground that Hebrew Home's claims are time-barred.

### 2.    ERISA Preemption

Principally, CoreSource moves to dismiss Hebrew Home's Complaint against it on the ground of ERISA preemption. ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a) (2010).  The term "State laws" includes "all laws, decisions, rules, regulations, and other State action having the effect of law of any State." 29 U.S.C. § 1144(c)(1). Common law claims for breach of contract and negligence are included within the term "State law." *See Pilot Life v. Dedeaux*, 481 U.S. 41, 48 (1987).

The Supreme Court construes ERISA's preemption provision broadly, such that a law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, (1983).  When a cause of action under state law "relates to" an ERISA benefit plan, it makes specific reference to and is premised on the existence of a pension plan. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990).  In *Shaw*, the Supreme Court noted, however, that "some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n.21.

The Supreme Court further cautioned that too broad an interpretation of the term "relate to" within ERISA would mean that "for all practical purposes preemption would never run its course." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).  The Court in *Travelers* concluded that Congress intended to preempt at least three categories of state law: "(1) laws that mandate employee benefit structures or their

administration, (2) laws that bind employers or plan administrator to particular choices or

preclude uniform administrative practices, and (3) laws that provide alternative enforcement

mechanisms to ERISA's civil enforcement provisions." *Travelers*, 514 U.S. at 658-59.

Since *Travelers*, the Fourth Circuit has applied a narrower scope of preemption. In *Coyne*

*v. Delany Co.*, for example, an employer sued the designers of group health insurance plans

alleging claims under ERISA and state law negligence. 98 F.3d 1457, 1458 (4th Cir. 1996).  In

finding that the negligence claim was not preempted by ERISA, the Fourth Circuit noted that

"the gravamen of the claim is that the defendants, in their capacities as insurance professionals,

negligently failed to obtain a replacement insurance plan." *Id.* at 1460.  The *Coyne* court held

that Congress did not intend to preempt "traditional state-based law of general applicability

[which did not] implicate the relations among the traditional ERISA plan entities," such as the

employer, plan fiduciaries, the plan, and the beneficiaries of the plan. *Id.* at 1469.

Nonetheless, Fourth Circuit decisions concerning breach of contract claims by a plan

sponsor against a third-party administrator based on the alleged improper processing of benefits

have been held preempted by ERISA. In *Tri-State Machine, Inc. v. Nationwide Life Insurance*

*Co.*, the plaintiff-employer alleged improper claims processing and mismanagement against the

defendant. 33 F.3d 309, 311 (4th Cir. 1994).  The court held that because the claims were

complaints about the processing of benefits under the plan, the complaints sufficiently related to

the plan and were thus preempted by ERISA. *Id.*

Here, Hebrew Home's claims against CoreSource fall into two categories: (1) claims

relating to CoreSource's failure to properly administer the ERISA Plan; and (2) claims relating to

CoreSource's failure to submit reinsurance claims to the Plan's reinsurer, Sun Life, pursuant to

the Plan Supervisor Agreement. Hebrew Home's claims relating to the improper processing of

benefit claims are preempted by ERISA because they sufficiently relate to the Plan. Here, as in *Tri-State* and *Stiltner*, part of Hebrew Home's claim avers that CoreSource did not "review, handle and process" Kamara's claim subject to the "conditions of the Plan", or exercise the appropriate degree of care in approving Kamara's claim. Compl. ¶¶ 23, 28.  These allegations cannot be resolved without reference to the plan itself, and thus are preempted by ERISA. *See Stiltner*, 74 F.3d at 1480.

Hebrew Home's claims against CoreSource also relate to the nature of CoreSource's liability outside the scope of the ERISA Plan. These claims are based solely on a separate agreement under which CoreSource undertook responsibility "in securing and placing reinsurance for the Employer or the Plan." Doc. 23 Ex. A at 9. A comparable case under similar facts was recently analyzed by the Fourth Circuit in *Great-West Life & Annuity Ins. Co. v. Info. Sys. & Networks Co.* 523 F.3d 266, 267 (4th Cir. 2008).  In that case, as here, a plan sponsor hired an administrator to perform certain non-discretionary administrative services for the plan sponsor.  *Id.* While the suit in that case involved the administrator's claim for breach of contract, rather than a Plan Sponsor's claim, as here, the basic principles of the Court's holding are instructive.

In *Great-West Life*, the Court held the administrator's claims were not preempted by ERISA because the administrator's claim for reimbursement arose out of duties imposed by another agreement separate and distinct from the ERISA Plan. *Id.* at 271. Similarly, in this case, Hebrew Home's breach of contract claims regarding CoreSource's failure to submit reinsurance claims to Sun Life relate solely to the Plan Supervisor Agreement—an agreement separate and distinct from the ERISA plan. Specifically, Hebrew Home avers that CoreSource failed to advise it of the claim approval on the final day of the run-out period, failed to forward the claim in a

diligent fashion, and failed to satisfy its responsibilities in securing reimbursement. Compl. ¶¶ 22-31. Such obligation would exist regardless of the duties imposed on CoreSource under the ERISA Plan. Thus, Hebrew Home's claims relating to CoreSource's duty to submit reinsurance claims to Sun Life are not preempted by ERISA because they relate to legal duties outside the scope of the Plan.

Furthermore, Hebrew Home's claims associated with the Plan Supervisor Agreement do not fall under one of the Supreme Court's three preemption categories. These claims: (1) do not mandate employee benefit structures or their administration; (2) do not bind employers or plan administrators to particular choices or preclude uniform administrative practices; and (3) do not provide alternative enforcement mechanisms to ERISA's civil enforcement provisions. *See Travelers*, 514 U.S. at 658–59.  First, nothing in Hebrew Home's claims mandate the administration of employee benefit structures, as the claims do not seek to regulate the terms of the plan or the type of benefits provided by that Plan. Rather, Hebrew Home seeks to recover the benefit of the bargain it contracted for with CoreSource under the separate Plan Supervisor Agreement. Second, these claims do not bind CoreSource to particular choices or preclude uniform administrative practices, since CoreSource is being sued in an independent capacity under that separate agreement. Third, Hebrew Home's claims are not aimed at obtaining ERISA benefits. Rather, the claims seek damages proximately caused by CoreSource's failure to fulfill its duties under the Plan Supervisor Agreement. The gravamen of these claims is that CoreSource failed to diligently seek reimbursement of Hebrew Home's claim under the Plan Supervisor Agreement, and thus these claims are premised upon that agreement rather than the ERISA Plan.

CoreSource's argument that traditional ERISA entities are involved is unavailing. Under the terms of the Plan Supervisor Agreement, Hebrew Home remained the Plan Administrator and retained final discretion over claims decisions. Doc. 23 Ex. A at 8.   If Hebrew Home prevails on its claims, Defendants will be liable not as fiduciaries or participants of the plan, but rather for their obligations arising out of the separate Plan Supervisor Agreement.  As in *Coyne*, Hebrew Home's claims are traditional state law claims of general applicability. *See* 98 F.3d at 1469. Moreover, the fact that Hebrew Home's claims might require the Court to examine some parts of the ERISA plan, as CoreSource argues, is not dispositive of preemption because the claims ultimately turn on legal duties outside the scope of the ERISA Plan. *See id.* at 1472 (holding that the plaintiff's malpractice claims turn on duties generated by Virginia common law and thus are not preempted by ERISA even though the claim might require the court to examine parts of the ERISA Plan).

CoreSource's assertion that the entirety of the conduct in question arises out of administration of the ERISA plan might well turn out to be true. Nonetheless, at the motion to dismiss stage, a court must accept the allegations of the complaint as true and view the complaint in the light most favorable to the plaintiff. *GE Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). Accordingly, CoreSource has not shown that its failure to seek reimbursement of the claim from Sun Life was sufficiently related to the Plan to warrant dismissal of this claim on the grounds of preemption. However, the Court finds that CoreSource's improper processing of Kamara's claim sufficiently relates to the Plan and thus finds preemption appropriate and grants CoreSource's motion to dismiss as to these claims. Thus, for the aforementioned reasons, CoreSource's Motion to Dismiss will be granted-in-part and denied-in-part, meaning that it will be granted as to all allegations within the complaint

relating to CoreSource's administration of the Plan and denied as to all allegations within the

complaint relating to CoreSource's failure to submit reinsurance claims to the Plan's reinsurer,

Sun Life. Since both Counts I and II contain allegations relating to CoreSource's failure to

submit reinsurance claims to Sun Life, the Court declines to dismiss either Count I or Count II in

its entirety.


      B.     <u>Sun Life's Motion to Dismiss</u>

Sun Life moves to dismiss Hebrew Home's breach of contract claim against it on the

ground that Hebrew Home failed to comply with the requirements of coverage under the

Reinsurance Policy and that Sun Life's denial of Hebrew Home's claim was therefore proper. To

state a claim for breach of contract, the moving party must have established . . . that the opposing

party breached its contractual duty. *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 443–44

(2010).  Maryland follows the objective interpretation principle of contracts, meaning that

"where the language employed in a contract is unambiguous, a court shall give effect to its plain

meaning and there is no need for further construction by the court." *ABC Imaging of Wash., Inc.

v. Travelers Indem. Co. of Am.*, 820 A.2d 628, 633 (Md. Ct. Spec. App. 2003).

Sun Life claims that the Reinsurance Policy between Hebrew Home and Sun Life

contractually obligated Hebrew Home to pay medical expenses incurred by Plan participants by

March 31, 2008 as a condition precedent for reimbursement by Sun Life. A condition precedent

is "a fact or event which the parties intend must exist or take place before there is a right to

performance." 13 Williston on Contracts § 38:1 (4th ed. 2010).

Thus, the Court must examine the language of the Reinsurance Policy to determine

whether Hebrew Home's obligation to pay out on the claims in a timely manner triggered Sun

Life's obligation to reimburse. The language of the Reinsurance Policy provides that "only those

expenses Incurred during the Policy Year [January 1, 2007- December 31, 2007] and (a) Paid during the Policy Year; or (b) Paid within 3 months of the Policy Year [i.e. by March 31, 2008] (the 'Run-Out Period')" are "eligible for reimbursement under this Policy." Doc. No. 16 Ex. A. Hebrew Home acknowledges in its Complaint that it failed to pay the claim at issue by March 31, 2008, or "within three months of the Policy Year." Compl. ¶ 17; Doc. No. 16 Ex. A. Because there is no dispute that Hebrew Home failed to satisfy its obligation to pay Kamara's claim during the applicable period, Hebrew Home is not entitled to recover against Sun Life under a breach of contract theory as a matter of law.

Hebrew Home claims that its obligation to make timely payments under the Reinsurance Policy constitutes not a condition precedent to Sun Life's duties, but a covenant with which Hebrew Home substantially complied. This argument is unpersuasive. The clear language of the Insurance Policy supports the claim that the parties intended to enter into a contract, the terms of which required Sun Life to provide reimbursement only on claims paid out by Hebrew Home prior to the expiration of the run-out period. Accordingly, Sun Life's motion to dismiss will be granted.

## IV.      CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part CoreSource's Motion to Dismiss and grants Sun Life's Motion to Dismiss. An Order will follow.


_____November 2, 2011_____                          _____/s/_____
Date                                                  Alexander Williams, Jr.
                                                      United States District Judge